# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| AFSANEH AZADEH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16-cv-1467 (KBJ) |
| | ) | |
| GOVERNMENT OF THE ISLAMIC REPUBLIC OF IRAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION
## (Public Version of ECF No. 30)

Judges are sometimes called upon to set aside heart-wrenching and terrible facts about a claimant's treatment at the hands of a defendant and enforce seemingly draconian, technical mandates of law. This is an especially difficult duty when the machinery of the judicial system itself appears to have played a role in the claimant's mistaken view of the applicable legal requirements. The somber circumstances of the instant case present one such scenario: Plaintiff Asfaneh Azadeh has sued the Government of the Islamic Republic of Iran ("Iran") and the Army of the Guardians of the Islamic Revolution ("Islamic Revolutionary Guard" or collectively "Defendants") for the uncontested and inhumane atrocities she suffered during the three months she spent wrongfully imprisoned in an Iranian jail, but she cannot obtain the judgment she seeks and may well deserve, without strict adherence to the procedural requirements of the Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C. § 1601, *et seq*. Azadeh undertook to satisfy the FSIA's personal-jurisdiction prescriptions by serving her

complaint on Iran pursuant to Title 28 sections 1330(b) and 1608 of the United States Code, in conjunction with guidance on the subject that appeared on the United States District Court for District of Columbia's website; however, in so doing, Azadeh effected service under 28 U.S.C. § 1608(a)(4) *before* attempting service under 28 U.S.C. § 1608(a)(3), which the law does not permit. *See Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015).

As a result, this Court cannot adopt the entirety of Magistrate Judge Harvey's Report and Recommendation ("R & R", ECF No. 27), which is before this Court at present, and instead, must **STAY** its consideration of that recommendation until Azadeh proceeds to serve Defendants under 28 U.S.C. § 1608(a)(4) once again. The relevant motion for a default judgment will be **DENIED** without prejudice, for want of personal jurisdiction, and once Azadeh cures the service defect, this Court will have the requisite authority to adopt the remainder of Magistrate Judge Harvey's thorough R & R and enter a default judgment in Azadeh's favor, if appropriate. *See Sinochem Int'l Co., Ltd. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."); *see also Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005) ("[A] court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant.").

I.  **BACKGROUND**[*]

On July 18, 2016, Azadeh filed a civil complaint against Iran and the Islamic

---

[*] Certain facts have been redacted from this Memorandum Opinion at Plaintiff's request.

2

Revolutionary Guard in this Court, bringing various tort claims under federal and state law arising from the torture she allegedly experienced during a three-month detention in Evin Prison. (*See* Compl., ECF No. 1, ¶¶ 51–81.) Among other things, Azadeh was repeatedly "subjected to mock executions . . . [and] hours-long interrogations during which she was beaten, whipped, threatened, and intimidated." (*Id.* ¶ 1.) She was also "poisoned and forced to take 'truth pills' on a daily basis[,] . . . [and she] lived in" an unsanitary "cell that was a mere six feet wide" without lighting, windows, or a bed. (*Id.*) Azadeh's captors regularly woke her in the middle of the night (Decl. of Asfaneh Azadeh, ECF No. 12-2, ¶ 24); denied her necessary medical treatment (*id.* ¶¶ 26, 32); ███████████████████████████████; subjected her to extreme psychological abuse (*id.* ¶¶ 27–29, 37, 39); ███████████████████████████████. Thus, Azadeh's lawsuit brings claims against Iran and the Islamic Revolutionary Guard for torture, assault and battery, intentional infliction of emotional distress, and false imprisonment. (*See id.* ¶¶ 51–81), and seeks an unspecified amount of compensatory and punitive damages (*see id.* (Prayer for Relief)).

On August 4, 2016, Azadeh attempted to serve her complaint on Iran and the Islamic Revolutionary Guard under 28 U.S.C. § 1608(a)(4), by having the clerk of the court send two copies of the summons, complaint, notice of suit, and a translation of those documents to the Director of Special Consular Services within the State Department, who was to transmit one copy of these documents to Defendants through diplomatic channels. (*See* Aff. Requesting Foreign Mailing, ECF No. 5, at 1.)[1] Azadeh attempted service in this manner first—rather than starting with service by mail under

---

[1] Page-number citations to the documents contained on the docket refer to the page numbers that the Court's electronic filing system automatically assigns.

3

28 U.S.C. § 1608(a)(3)—largely due to a statement contained in "the *Attorney Manual for Service of Process on a Foreign Defendant*, issued by the U.S. District Court for the District of Columbia[,]" which appeared to authorize this course of action. (Pl.'s Resp. to Order to Show Cause, ECF No. 20, at 2–3.) At the time that Azadeh consulted it, the *Manual* stated in relevant part that

> [t]he countries of Iran and Iraq have not objected to service by mail. However, many attempts at service by mail or courier are unsuccessful. Therefore, it is okay for an attorney to request service directly through diplomatic channels (28 U.S.C. § 1608(a)(4)) without attempting service under any other provision first.

Azadeh made such a request for diplomatic services, as mentioned, and the clerk of the court complied. (*See* Certificate of Clerk, ECF No. 6, at 1.) Then, on February 1, 2017, the State Department indicated that it had transmitted Azadeh's documents through diplomatic channels to the Iranian Ministry of Foreign Affairs on January 17, 2017. (*See* Return of Service and Aff., ECF No. 8, at 1.)

Believing that she had properly served Iran, and knowing that neither Iran nor the Islamic Revolutionary Guard had responded to her complaint, Azadeh petitioned the clerk for an entry of default on March 22, 2017. (*See* Aff. for Default, ECF No. 10.) The clerk of the court entered the requested default the very next day. (*See* Entry of Default, ECF No. 11.) Azadeh subsequently moved for a default judgment against Defendants (*see* Pl.'s Mot. for Default J. ("Pl.'s Mot."), ECF No. 13, at 1), after which this Court referred the entire matter to Magistrate Judge Harvey for full case management (*see* October 10, 2017 Minute Entry).

On June 13, 2018, Magistrate Judge Harvey issued a fifty-three page R & R recommending that Plaintiff Azadeh's motion for a default judgment be granted. (*See* R

4

& R at 2.)  Magistrate Judge Harvey addressed various legal issues in reaching this conclusion, and ultimately determined that (1) the Court has subject-matter jurisdiction over the instant dispute under the FSIA (*see id.* at 20–27); (2) the Court may properly exercise personal jurisdiction over Defendants consistent with the FSIA (*see id.* at 27–33); (3) Defendants are in fact liable to Azadeh for an array of tortious actions (*see id.* at 33–38); and (4) Azadeh is entitled to damages consisting of $13,028,889 for her pain and suffering, $5,176,733 in economic damages, and a punitive damages award of $18,205,622 (*see id.* at 38–52).  Moreover, as relevant here, Magistrate Judge Harvey specifically grappled with the issue of what steps are required to serve a foreign sovereign under the FSIA, and, prior to reaching his conclusions regarding personal jurisdiction, he expressly required Azadeh to effect service by mail.

To be specific, on April 23, 2018, Magistrate Judge Harvey expressed to Azadeh his concern that she had only attempted to serve the defendants through diplomatic channels under 28 U.S.C. § 1608(a)(4), and was thus seeking a default judgment without having attempted to serve Iran or the Islamic Revolutionary Guard under section 1608(a)(3).  (*See* Order to Show Cause, ECF No. 17, at 1–2 (explaining that "recent decisions from this Court have held that service on Iran may not be perfected solely via diplomatic channels pursuant to section 1608(a)(4)"; rather, "service [must] be attempted first via a form of mail requiring a signed receipt pursuant to section 1608(a)(3)").)  Azadeh responded to Magistrate Judge Harvey's order by claiming, *inter alia*, that "[i]t is highly prejudicial to Ms. Azadeh to inform her, well over a year after service was made under (a)(4), that she first should have attempted service under (a)(3), despite what the [c]ourt's own Attorney Manual provides and despite the [c]ourt's

5

practice in other cases" (Pl.'s Resp. to Order to Show Cause at 14), and she further argued that "the Court should not require service to be made again" under section 1608(a)(4) (*id.* at 15).

In the meantime, on May 4, 2018, Azadeh asked the clerk of the court to mail one copy of the summons, complaint, and a translation of each to Iran's ministry of affairs, pursuant to the procedure laid out in section 1608(a)(3). (*See* Affs. Requesting Foreign Mailing, ECF Nos. 21 & 22.) On May 29, 2018, Azadeh reported that this service by mail "was attempted and refused on May 20, 2018[,]" and she thereby established that service could not be made under section 1608(a)(3) in the instant case. (Pl.'s 2d Status Report, ECF No. 25, at 2.) Azadeh also insisted that "the [c]ourt should not require Plaintiff to again serve through diplomatic channels under [28 U.S.C. § 1608(a)(4)]." (*Id.*)

Magistrate Judge Harvey agreed that Azadeh's service should be considered sufficient at that point, and issued the aforementioned R & R on June 13, 2018. In regard to the FSIA's personal jurisdiction requirements, the R & R asserts that "Plaintiff's efforts at service to date [should] be deemed sufficient under section 1608(a) for entry of a default judgment against Defendants" (R & R at 32), for a number of reasons. First, the R & R reasons that section 1608(a) can be interpreted as setting forth service requirements that appear in "'descending order of *preference*,' not obligation[.]" (*Id.* (quoting *Barot*, 785 F.3d at 27).) In addition, the R & R contends that, given Azadeh's prior compliance with the diplomatic channels requirement (to which defendants did not respond), there was "no reason to believe the outcome" of such service "would be any different" the second time around, and no "conceivable

purpose" existed for making Azadeh go through such an "empty gesture[.]" (*Id.*) The R & R also emphasized that Azadeh had only undertaken good-faith efforts to serve Defendants (*id*. at 33), and that she had done so partly based on the erroneous districtwide guidance laid out in the *Attorney Manual for Service of Process on a Foreign Defendant* (s*ee id.*). Moreover, the R & R observed that Azadeh would likely suffer severe prejudice if she was required to proceed to serve defendants again under section 1608(a)(4) (*see id.* at 32–33), because embarking upon any such effort would mean that she would likely miss the predetermined September 2018 deadline to submit her claim (accompanied by a judgment in her favor in this matter) to the United States Victims of State Sponsored Terrorism Fund for payment (*see id.* at 31).

Taken together, these significant considerations persuaded the Magistrate Judge that the equities "weighed in favor of finding Plaintiff's service on Defendants sufficient[,]" and thus, he recommended that "this Court find that it has personal jurisdiction under the FSIA over Defendants." (*Id.* at 33.) To this day, neither Iran nor the Islamic Revolutionary Guard has appeared in the instant matter, and their fourteen-day window to object to the Magistrate Judge's R & R has now passed. This Court is also unaware of any additional effort by Azadeh to effect service through diplomatic channels under section 1608(a)(4), after the unsuccessful mailing of her documents to Iran and the Islamic Revolutionary Guard under section 1608(a)(3).

## II. LEGAL STANDARDS

### A. Motions For Default Judgment And The FSIA

It is clear beyond cavil that a court may enter a default judgment against a defendant who has failed to file a responsive pleading or has otherwise failed to defend

7

itself against a lawsuit that a plaintiff has filed. *See* Fed. R. Civ. P. 55. Of course, "strong policies favor resolution of disputes on their merits," and a "default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980) (citation omitted).

When a court considers whether or not to grant a motion for default judgment, it must remember that "the entry of a default judgment is not automatic." *Mwani*, 417 F.3d at 6. Thus, before a default judgment is entered in a given case, a district court should assure itself of both its subject-matter jurisdiction over the claims and its personal jurisdiction over the parties. *See id.*; *Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 74 (D.D.C. 2017) ("[T]he procedural posture of a default does not relieve a federal court of its 'affirmative obligation' to determine whether it has subject matter jurisdiction over the action." (citation omitted)); *see also Jerez v. Republic of Cuba*, 775 F.3d 419, 422 (D.C. Cir. 2014) ("A default judgment rendered in excess of a court's jurisdiction is void."). With respect to personal jurisdiction specifically, "the plaintiffs retain the burden of proving personal jurisdiction[]"; however, given "the absence of an evidentiary hearing" between the parties on the matter, "they can satisfy that burden with a prima facie showing[.]" *Mwani*, 417 F.3d at 7 (citation omitted); *see also id.* (explaining that the plaintiff's showing can be based on the pleadings and any affidavits or written materials that can be obtained).

In addition to a prima facie showing regarding the threshold jurisdictional requirements, a plaintiff who seeks a default judgment against a foreign sovereign must demonstrate his entitlement to such a judgment by establishing the merits of his claims.

8

*See* 28 U.S.C. § 1608(e) ("No judgment by default shall be entered by a court of the United States or of a State against a foreign state . . . unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."). The plaintiff must offer "admissible testimony in accordance with the Federal Rules of Evidence," *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1049 (D.C. Cir. 2014) (citation omitted), but "§ 1608(e) does not require the court to demand more or different evidence than it would ordinarily receive," *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017) (internal quotation marks and citation omitted). In fact, while default judgments in FSIA cases are more difficult to obtain than in non-FSIA cases due to this proof-of-merits requirements, "the quantum and quality of evidence that might satisfy a court can be less than that normally required." *Id.* (internal quotation marks and citation omitted).

### B. Personal Jurisdiction Under The FSIA

The FSIA "establishes a comprehensive framework for determining whether a court in this country, state or federal, may exercise jurisdiction over a foreign state." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610 (1992). That comprehensive framework is also the "sole basis for" a court to "obtain[] jurisdiction over a foreign sovereign." *Id.* at 611 (internal quotation marks and citation omitted). In other words, for a plaintiff's suit against a foreign sovereign to proceed, the FSIA must explicitly confer jurisdiction for a case against the foreign sovereign under the circumstances presented. *See Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1318 (2017). Of course, the term "jurisdiction" encompasses two distinct concepts: first, there is a question of whether the court has "jurisdiction over the category of claim in suit (subject-matter jurisdiction)[,]" and second, there is a

9

question of whether the court has jurisdiction over "the parties (personal jurisdiction)." *Sinochem Int'l*, 549 U.S. at 431.

The FSIA lays out a detailed statutory scheme for both kinds of jurisdiction. *See Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 839 (D.C. Cir. 2009). Subject-matter jurisdiction in any action against a foreign state "depends on the [application] of one of the specified exceptions to sovereign immunity" laid out in 28 U.S.C. §§ 1605–07. *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983); *see also* 28 U.S.C. § 1604 (conferring a broad grant of immunity "except as provided in sections 1605 to 1607 of this chapter"). The FSIA further establishes that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have [subject-matter jurisdiction] . . . where service has been made under section 1608 of this title." 28 U.S.C. § 1330(b). This means that if a federal court has subject-matter jurisdiction over a given case, it need only assure itself that the plaintiff has properly served the foreign state in accordance with section 1608(a) in order to exercise personal jurisdiction over the foreign state. *See I.T. Consultants, Inc. v. Republic of Pakistan*, 351 F.3d 1184, 1191 (D.C. Cir. 2003) ("[P]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which subject matter jurisdiction exists under the FSIA, so long as the defendant was properly served." (internal quotation marks and citation omitted)).

Notably, the FSIA's service requirements are anything but perfunctory. In relevant part, section 1608(a) provides that "[s]ervice in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state" in one of four ways:

10

> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or
>
> (4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C. § 1608(a).

Significantly for present purposes, the D.C. Circuit has described section 1608(a) as providing "four methods of service in descending order of preference[,]" *Barot*, 785 F.3d at 27, and it has also clarified that "a plaintiff *must* attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on[,]" *Angellino v. Royal Family Al-Saud*, 688 F.3d 771, 773 (D.C. Cir. 2012) (emphasis added) (internal quotation marks and citation omitted). Moreover, and importantly, the D.C. Circuit has required "strict adherence to the terms of 1608(a)" when a plaintiff attempts to serve a foreign sovereign. *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994); *see also id.* ("Leniency . . . would

11

disorder the statutory scheme."). In this regard, binding circuit precedents have emphasized that "neither substantial compliance" with these provisions by the plaintiff, "nor actual notice" on the part of the defendant, will "suffice[] under section 1608(a)." *Barot*, 785 F.3d at 27.

## III. DISCUSSION

Having reviewed the R & R and the relevant case law, this Court is confident that Magistrate Judge Harvey has diligently addressed Azadeh's claims on the merits, and with respect to the threshold jurisdictional issues, it has no doubt that the R & R is correct with respect to its conclusion that this Court has subject-matter jurisdiction over the instant dispute. (*See* R & R at 20–27.) *See also* 28 U.S.C. § 1605A (stripping away sovereign immunity for any country that has been "designated" a "state sponsor of terrorism" when its "official, employee, or agent" has engaged in "an act of torture" that caused a United States national "personal injury or death[,]" provided that the country is "afforded . . . a reasonable opportunity to arbitrate the claim in accordance with the accepted international rules of arbitration"). Yet the question of *personal* jurisdiction gives this Court pause under the circumstances presented here. And based on the facts that Azadeh has presented, this Court has no choice but to conclude that Azadeh has not yet effectively served Defendants under the FSIA, because her prior service of process under section 1608(a)(4) was invalid, and because she has not undertaken to re-serve Defendants under that section now that she has established that service by mail under section 1608(a)(3) was ineffective in this case. [2]

---

[2] The Magistrate Judge correctly noted that the Islamic Revolutionary Guard is a political subdivision of Iran, and thus, like Iran itself, that defendant must be served under 28 U.S.C. § 1608(a). *See Ben-Rafael v. Islamic Republic of Iran*, 718 F. Supp. 2d 25, 31–33 (D.D.C. 2010).

12

The invalidity of Azadeh's prior service under section 1608(a)(4) becomes apparent when viewed in light of the applicable statutory text and the D.C. Circuit's pronouncements about the service requirements of the FSIA. Binding precedents make absolutely clear that section 1608(a)'s "four methods of service" are set forth "in descending order of preference[,]" *Barot*, 785 F.3d at 27, and that "a plaintiff must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on[,]" *Angellino*, 688 F.3d at 773 (internal quotation marks and citation omitted). Although Azadeh correctly determined that the methods of service in sections 1608(a)(1) and 1608(a)(2) were unavailable, given that no "special arrangements for service" existed between her and Defendants, and Iran is not a party to any "applicable international convention on service of judicial documents[,]" *Karcher v. Islamic Republic of Iran*, 249 F. Supp. 3d 557, 560 (D.D.C. 2017); *see also Haim v. Islamic Republic of Iran*, 902 F. Supp. 2d 71, 73 (D.D.C. 2012); *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 70 (D.D.C. 2010), she mistakenly skipped service by mail under section 1608(a)(3), and, as other courts in this district have noted, "[t]he clear language of the statute provides that service may be . . . made pursuant to § 1608(a)(4)" *only* "if service cannot be made within 30 days under [28 U.S.C. § 1608(a)(3),]" *Estate of Hirshfeld v. Islamic Republic of Iran*, 235 F. Supp. 3d 45, 47 (D.D.C. 2017) (internal quotation marks and citation omitted). Azadeh's failure to adhere strictly to the plain terms of section 1608(a) (by first attempting service under section 1608(a)(3) before proceeding to serve defendants under section 1608(a)(4)) rendered her service under section 1608(a)(4) invalid, as Magistrate Judge Harvey recognized with his Order to Show Cause. (*See* Order to Show Cause at 1–2.)

13

*See also Estate of Hirshfeld*, 235 F. Supp. 3d at 48 ("[T]he statutory scheme clearly contemplates steps that must be taken in a particular sequence in order to properly effectuate service."); *see, e.g.*, *Karcher*, 249 F. Supp. 3d at 558–59; *Relvas v. Islamic Republic of Iran*, No. 14-cv-01752, (D.D.C. Feb. 18, 2016) (Mem. & Order), ECF No. 32, at 2.

The fact that Azadeh's efforts might have sufficed to effect proper service if she had been suing a country that categorically refuses service by mail is of no moment. Apparently, some twenty-four countries specifically objected to service by mail when they acceded to the Hague Convention, and thus the method of service proscribed in section 1608(a)(3) is categorically unavailable when attempting to serve those countries.[3] But Iran is not a signatory to the Hague Convention, and it has never filed a categorical objection to service by mail. Furthermore, it has long been clear from this district's case law that Iran accepts service through the procedures laid out in section 1608(a)(3) with some frequency. *See, e.g.*, *Karcher*, 249 F. Supp. 3d at 559–60; *Oveissi v. Islamic Republic of Iran*, 879 F. Supp. 2d 44, 49 (D.D.C. 2015); *Taylor v. Islamic Republic of Iran*, 811 F. Supp. 2d 1, 6 (D.D.C. 2011). Therefore, it cannot be said that section 1608(a)(3) is a categorically "unavailable" method for serving Iran, which means that Azadeh had an obligation to at least try to serve Defendants under that FSIA provision for a period of thirty days prior to pursuing the method of service laid out in section 1608(a)(4). *See Angellino*, 688 F.3d at 773 ("[A] plaintiff must attempt service by [each] method (or determine that it is unavailable) before proceeding

---

[3] *See Table Reflecting Applicability of Articles 8(2), 10(a)(b), and (c), (15(2) and 16(3) of the Hague Service Convention*, https://assets.hcch.net/docs/6365f76b-22b3-4bac-82ea-395bf75b2254.pdf (last visited July 9, 2018).

14

to the [next] method[.]" (internal quotation marks and citation omitted)).

It is truly unfortunate that the *Attorney Manual* published on this district's website led Azadeh to believe otherwise at the time she consulted it. (*See* Pl.'s Resp. to Order to Show Cause at 2–3.) But this fact is unavailing, because courts in this district have long recognized that the *Manual*'s advice is wrong in this regard. *See Karcher*, 249 F. Supp. 3d at 558–59 (explaining that the *Attorney Manual* wrongly suggests that a plaintiff need not attempt service under section 1608(a)(3) when suing Iran); *Estate of Hirshfeld*, 235 F. Supp. 3d at 47 (same); *Revlas*, No. 14-cv-01752, (D.D.C. Feb. 18, 2016) (Mem. & Order), ECF No. 32, at 3 (same). Even more important, the *Manual*'s misleading advice has resulted in a lack of personal jurisdiction over Iran that is not a waivable or otherwise excusable defect in this context. *Cf. Bowles v. Russell*, 551 U.S. 205, 214 (2007) ("[T]his Court has no authority to create equitable exceptions to jurisdictional requirements[.]").

This Court also cannot find that Azadeh has, in effect, cured the prior personal jurisdiction problem by backtracking and seeking to effect service by mail under section 1608(a)(3). (*See* R & R at 32.) To date, Azadeh has not successfully re-served Defendants under section 1608(a)(4), and because the prior diplomatic service was invalid due to her failure to undertake first service by mail under section 1608(a)(3), as far as the statutory scheme is concerned, Azadeh has yet to complete the final method of service—the diplomatic route that section 1608(a)(4) prescribes. It is clear that Congress meant for section 1608(a) to establish a relative *hierarchy* of service methods—in "descending order of preference[,]" *Barot*, 758 F.3d at 27—and that alone suggests that a plaintiff may not opt to serve a foreign defendant *out of order*, *i.e.*, by

pursuing a *less* preferred method first, in contravention of the express language of the statute. Indeed, shortly after stating that section 1608(a) "provides four methods of service in descending order of preference," the D.C. Circuit specifically asserts that a plaintiff can only pursue service under section 1608(a)(4) "*if* none of the first three methods works." *Id.* (emphasis added). Thus, contrary to the R & R's reasoning, the availability of service under section 1608(a)(4) is expressly conditioned upon a plaintiff's failed efforts to serve a foreign sovereign under the other three prior subsections of section 1608(a)—which is precisely what the statutory text states and what the D.C. Circuit's prior pronouncements establish. *See Angellino*, 688 F.3d at 773.

The R & R also proffers several additional reasons that "Plaintiff's efforts at service to date [should] be deemed sufficient[,]" none of which are sufficient to yield that result. (R & R at 32.) For example, the R & R observes that Azadeh "successfully served the summons and complaint on Defendants in January 2017 via diplomatic channels under § 1608(a)(4)," and asserts that "no conceivable purpose—or interest of Defendants—would be served by requiring her" to undertake the process laid out in section 1608(a)(4) once again. (*Id.*) But the D.C. Circuit has explicitly foreclosed such reasoning. First in *Transaero* and then again in *Barot*, the Circuit made clear that neither a plaintiff's "substantial compliance" with the requirements of section 1608(a) nor a defendant's "actual notice" of the pertinent lawsuit obviates the need to strictly adhere to section 1608(a)'s mandates. *Barot*, 785 F.3d at 27; *Transaero*, 30 F.3d at 153–54. Thus, it does not matter that Azadeh *almost* complied with the service requirements laid out in section 1608(a), or that Iran and the Islamic Revolutionary

16

Guard are aware of this lawsuit by virtue of her prior success in providing notice through diplomatic channels; unfortunately, with respect to serving a foreign state under section 1608(a), a near miss is still a miss. *See Estate of Hirshfeld*, 235 F. Supp. 3d at 47–48 (refusing to find effective service given that the plaintiff successfully served the foreign state under section 1608(a)(4) before ever attempting service under section 1608(a)(3)); *see also Transaero*, 30 F.3d at 154 ("[L]eniency . . . would disorder the statutory scheme.").

The R & R likewise laments the prejudice that Azadeh will suffer if she must once again attempt to serve Iran and the Islamic Revolutionary Guard through diplomatic channels. (*See* R & R at 31 (noting that requiring Azadeh to "serve Defendants again via diplomatic channels . . . would in all likelihood result in Plaintiff missing" the pertinent claims deadline for the U.S. Victims of State Sponsored Terrorism Fund, thus "denying her the most realistic path for recovery on any judgment").) Magistrate Judge Harvey may well be right that such prejudice is especially undeserved in this case, because Azadeh "fairly read" the district court's *Attorney Manual* to suggest that a plaintiff need not attempt to serve Iran under section 1608(a)(3) before proceeding to serve Iran under section 1608(a)(4). (*Id.* at 33.) But as this Court reads the law, the regrettable and even potentially unfair prejudice to Azadeh under these circumstances cannot excuse her failure to follow the FSIA's prescriptions. This Court simply cannot exercise personal jurisdiction that it does not have, even if equity would warrant doing so. *See Bowles*, 551 U.S. at 214. At most, the Court can take this opportunity to emphasize that Azadeh has proceeded in good faith at all relevant times, and that her mistakes of service are ones in which the U.S. district court

itself has played a "prominent role[,]" *Barot*, 785 F.3d at 29, in the hope that such considerations will spur the Special Master who administers the Fund to grant Azadeh "a reasonable extension of [the] deadline" to file her claim, if necessary, 34 U.S.C. § 20144(c)(3)(B). And, if the Special Master does so, the prejudice to Azadeh from having to once again undertake service of process under section 1608(a)(4) will be greatly reduced.[4]

## IV. CONCLUSION

For the reasons explained above, Azadeh's service upon Iran and the Islamic Revolutionary Guard was defective, and this Court cannot yet exercise personal jurisdiction over Defendants pursuant to 28 U.S.C. § 1330(b). Thus, Azadeh must follow the procedure laid out in 28 U.S.C. § 1608(a)(4) once more, and after she does so, Defendants will fall within this Court's personal jurisdiction such that a default judgment can be ordered, if appropriate. A separate Order consistent with this Memorandum Opinion will follow.

DATE: July 11, 2018

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge

---

[4] This Court believes that Azadeh's case presents an excellent candidate for such an extension. Again, Azadeh has proceeded at all times in good faith and the risk of substantial prejudice to her if she proceeds to re-serve Defendants under section 1608(a)(4) is apparent. Once Azadeh has effected service upon Defendants through that section, this Court will move with the greatest possible haste to address any subsequent motion for a default judgment, which should provide grounds for the Special Master to consider, and grant, any necessary application by Azadeh for an extension of time to file her claims with the Fund.